# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-05033-01-CR-SW-RK |
| ) | |
| WILLIAM M. EATON, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant moves to suppress statements made by him to law enforcement on October 24, 2011. (*See* Doc. 21.) On December 3, 2015, the undersigned held a hearing on the instant Motion. (*See* Docs. 30 and 31.) Defendant was present with his attorney, David Mercer. The United States was represented by James Kelleher. During the hearing the Court heard testimony from Det. Chip Root and Defendant's mother, Katherine Eaton. After careful review of the evidence and for the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion, (Doc. 21), be **DENIED**.

### I. Findings of Fact

On October 24, 2011, after conducting an investigation regarding the receipt and distribution of child pornography, investigators with the Southwest Missouri Cyber Crimes Task Force ("SWMCCTF") served a search warrant upon 3012 West 14th Street in Joplin Missouri. (Doc. 31.) At that time, Defendant William Eaton lived at the residence at issue in the search

warrant with his mother, Katherine Eaton. (Doc. 24-1; Doc. 31.)[1] Upon arrival at the home, Corporal Brad Bearden of the Missouri State Highway Patrol and SWMCCTF knocked on the door. (Doc. 31.) Defendant and his mother were present at the home. (*Id.*) Between six and eight investigators were allowed inside the house, including one uniformed officer who had a holstered firearm. (*Id.*) Corporal Bearden explained to Defendant and his mother that they had a search warrant for the residence. (*Id.*) Defendant and his mother were asked to come into the living room; some investigators also came into the living room. (*Id.*) Defendant's mother sat in a chair in the living room, while officers guided Defendant to sit on a love seat. (*Id.*) The officers were calm and cordial to Defendant and his mother. (*Id.*)

Shortly after the investigators entered the residence and explained the nature of the warrant, Defendant began to make statements related to child pornography. (*Id.*) Detective Chip Root of the Joplin Police Department and SWMCCTF then decided that, because Defendant's mother was present and he did not want Defendant to be embarrassed, it would be better to speak to Defendant outside the residence in Det. Root's vehicle. (*Id.*) Det. Root asked Defendant if he would accompany him to his vehicle, and Defendant agreed.[2] (*Id.*) Defendant was not handcuffed or placed under arrest. (*Id.*)

The vehicle was a four-door cab pickup truck, which was parked in the driveway of Defendant's residence. (*Id.*) It was unmarked and did not contain typical police car equipment, such as a partition or cage. (*Id.*) Det. Root sat in the driver's seat of the truck, and Task Force Officer ("TFO") Brian Martin of the SWMCCTF sat in the back seat. (*Id.*) Defendant sat in the

---

[1] Doc. 24-1 is a transcript of the interview with Defendant on October 24, 2011, which memorializes statements by Defendant that are at issue in the instant Motion. This transcript, as well as an audio recording of the interview, was admitted into evidence without objection at the hearing on this matter. (*See* Doc. 30-1.)

[2] Defendant's mother testified that Defendant was told to accompany investigators to the truck. (*See* Doc. 31.) However, she could not remember who told him that, and admitted to having memory problems. (*Id.*) On the other hand, Det. Root consistently testified that he asked Defendant to accompany him to the truck, and that Defendant agreed. (*Id.*) Therefore, Det. Root's testimony is given greater weight.

2

front passenger seat. (*Id.*) The doors to the truck remained unlocked for the duration of the interview. (*Id.*) After getting into the truck, Det. Root began recording the interview and read Defendant his *Miranda* rights. (*Id.*; *see also* Doc. 24-1.) After being advised of his rights, Defendant acknowledged that he understood those rights and continued to talk with Det. Root and TFO Martin. (Doc. 24-1; Doc. 31.) Defendant initially denied any involvement in materials containing child pornography. (Doc. 24-1; Doc. 31.) Later, Defendant asserted that he had downloaded the images depicting child pornography on accident and then deleted it. (Doc. 24-1; Doc. 31.) Then, Defendant admitted that he had conducted online searches for child pornography, but deleted it. (Doc. 24-1; Doc. 31.) Finally, Defendant stated that he began searching for child pornography three or four years ago, and had downloaded child pornography within the last month. (Doc. 24-1; Doc. 31.) The entire interview lasted approximately ninety minutes. (Doc. 24-1; Doc. 31.) During the course of the interview, two other officers approached the vehicle to update Det. Root and TFO Martin of the progress of the search and provide information. (Doc. 24-1; Doc. 31.) One of those officers, Corporal Bearden, then aided in the interview by providing information and engaging with Defendant, but did not enter the vehicle at any time.[3] (Doc. 24-1; Doc. 31.)

## II.    Conclusions of Law

In support of his Motion, Defendant contends that the statements he made to Det. Root and TFO Martin were: (1) made while he was in the custody of law enforcement; and (2) the produce of an overborne will and improper coercion. Defendant therefore moves the Court to suppress his statements to law enforcement from October 24, 2011. The Government responds that Defendant was not in custody at the time he made any statements to law enforcement.

---

[3] The other officer only came to the truck for the limited purpose of asking Defendant about keys or combinations to a locked bag and safe found during the execution of the search warrant. (*See* Doc. 24-1; Doc. 31.)

Additionally, the Government asserts that, even assuming *arguendo* that Defendant was in custody, the statements were made voluntarily after Defendant had been advised of his *Miranda* rights. Thus, the Government contends that the statements were not made because of a coercive or overbearing environment. The Court takes up the parties' arguments below.

Statements given by a defendant during a custodial interrogation are inadmissible unless the defendant has knowingly, voluntarily, and intelligently waived his right to against self-incrimination. *United States v. Binion*, 570 F.3d 1034, 1040 (8th Cir. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Thus, in assessing the admissibility of a defendant's statements the court must examine: (1) whether the defendant was in custody; and (2) whether he knowingly, voluntarily, and intelligently waive his right against self-incrimination. *Id.* "The ultimate question in determining whether a person is in 'custody' for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Williams*, 760 F.3d 811, 814 (8th Cir. 2014) (internal quotations and marks omitted). To answer this question, courts examine "the totality of the circumstances that confronted the defendant at the time of questioning, and inquire whether a reasonable person would have felt that he or she was free to terminate the interview and leave." *Id.* (citation omitted).

In this case, the evidence and circumstances show that Defendant was not in custody. First, shortly after law enforcement came into contact with Defendant, Det. Root asked Defendant to accompany him to his truck. (Doc. 31.) Defendant agreed to do so, and voluntarily went with Det. Root to the truck parked in the driveway of Defendant's residence to talk. Second, Det. Root informed Defendant that he was not necessarily going to jail at the time he began conducting the interview. (*See* Doc. 24-1.) Additionally, Det. Root expressly informed

4

Case 3:14-cr-05033-RK   Document 32   Filed 01/21/16   Page 4 of 8

Defendant that he could agree to exercise his *Miranda* rights at any time and choose to not answer any questions or make any statements. (*Id.*) Defendant's mother also testified that officers indicated to Defendant that he was not under arrest at the time. (*See* Doc. 31.) These admonitions weigh heavily in favor of finding that Defendant was not in custody. *Williams*, 760 F.3d at 814-15 (advice that a suspect is not under arrest, and that his participation in questioning is voluntary, is highly probative of whether a reasonable person would feel that he may terminate the interview and leave); *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) ("[t]he most obvious and effective means of demonstrating that a suspect has not been taken into custody . . . is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will.") (quotation omitted). Third, a review of the interview shows that the exchanges between Defendant, Det. Root, and TFO Martin were cordial and calm. Fourth, while the location of the interview was somewhat confined and officers outnumbered Defendant, Defendant was positioned in such a way that he could have easily exited the truck or terminated the interrogation at any time. Defendant was interviewed whilst sitting in the front passenger seat of an unmarked police vehicle. (Doc. 31.) This vehicle – a truck – was not outfitted with equipment typically found in a police car; most notably, it had no grate or cage. (*Id.*) Det. Root sat in the driver's seat, while TFO Martin sat in the back seat. (*Id.*) The doors were not locked, and no other officers entered the vehicle. (*Id.*) Despite these facts, such an environment may have led Defendant to feel that he was not entirely free to leave because two officers were in the vehicle with him and, later, another officer stood outside the vehicle. *United States v. Sanchez*, 676 F.3d 627, 631 (8th Cir. 2012) (interviews that are police dominated usually weigh in favor of a finding that a defendant was in custody). However, the totality of the circumstances in this case, particularly the fact that Defendant was expressly

5

informed that he could end questioning at any time and that he was not under arrest at the time of the interview, show that Defendant was not in custody when he made statements to Det. Root and TFO Martin.

Defendant also contends that his statements should be suppressed because they were given while he was subjected to a coercive, overbearing, and confining environment created by law enforcement. Specifically, he contends that having two officers force him to leave his home for the confines of a police vehicle and engaging him in an interrogation for approximately ninety minutes, created an overbearing environment and questioning. Additionally, he argues that, in addition to those circumstances, law enforcement's actions during the execution of a warrant created a coercive environment.

"A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne, and voluntary statements must not be the result of deception, intimidation, or coercion of the person giving the statement." *United States v. Jimenez*, 478 F.3d 929, 932-33 (8th Cir. 2007) (internal quotation and marks omitted). "The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *United States v. Astello*, 241 F.3d 965, 967 (8th Cir. 2001) (quotation omitted). Additionally, factors courts consider in determining whether a statement is the result of coercion include: "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Daniels*, 775 F.3d 1001, 1004-05 (8th Cir. 2014). The government bears the burden of proving "by a preponderance of the evidence that

the defendant's statements were voluntary." *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005).

Here, Defendant's statements need not be suppressed because he was not subject to an overbearing or coercive environment and thus voluntarily waived his right to remain silent. First, the circumstances do not show that officers created an overbearing environment. Of the six or seven officers present, only one was in uniform. Det. Root testified that it is typical for a task force to bring several officers when executing a warrant, including at least one uniformed officer from local law enforcement. He also testified that it is typical for officers executing a warrant to try to gather the occupants of a home in the largest room of the house in order to better control the conditions of the search. In this case, officers, Defendant, and Defendant's mother gathered in the living room. Additionally, the evidence shows that the Defendant's and his mother's interaction with the officers in the home was cordial and calm. Defendant's mother testified that she willingly sat in a chair in the living room and that the officers were not rude or unkind to her or Defendant. Further, as discussed, the evidence shows that Defendant willingly accompanied Det. Root and TFO Martin to their vehicle. Again, the interaction between Defendant and these officers was calm and cordial. Moreover, there is no evidence showing that Defendant was subjected to threats or violence, or made any promises such that his will was overborne. Rather, the record shows that Defendant was informed of his right against self-incrimination, acknowledged that he understood those rights, and then continued to talk with Det. Root and TFO Martin. (*See* Doc. 24-1; Doc. 31.)

Second, the circumstances to not support a conclusion that Defendant was subjected to a coercive environment. A review of the interview with Defendant and other evidence of record shows that he is a mature individual, who is neither physically nor mentally impaired.

7

Defendant, however, takes issue with the length of the interview as well as the environment in which it occurred. The evidence indicates that Det. Root and TFO Martin asked Defendant to talk in the truck make him feel more comfortable and less embarrassed. As noted, Defendant was seated in the front passenger seat of a vehicle that was unlocked for the duration of the interview, and the conversation was calm and cordial. Though Corporal Bearden approached the vehicle to inform Det. Root and TFO Martin of the status of the search, he did so towards the end of the interview after Defendant had already made several statements regarding his involvement with child pornography. (*See* Doc. 24-1.) Moreover, the interview of time of ninety minutes is not so lengthy that Defendant would have felt forced or otherwise improperly compelled to make statements, particularly considering that Defendant began admitting to viewing and downloading child pornography shortly after the interview began. (*See* Doc. 24-1; Doc. 31.) Such circumstances show that the environment was not coercive, but rather that Defendant voluntarily waived his *Miranda* rights and made voluntary statements to the officers. As such, regardless of whether Defendant was in custody, Defendant's statements need not be suppressed.

### III.     Recommendation

Therefore, for the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion, (Doc. 21), be **DENIED**.

**IT IS SO ORDERED.**

/s/ David P. Rush
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: January 21, 2016